UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Norma J. Burkitt, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 09-1157 |
| | ) | |
| NECA-IBEW Welfare Trust Fund, | ) | |
| Defendant | ) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court are the parties' cross motions for summary judgment (Docs. 5 and 8). As explained more fully herein, the Plaintiff's motion is denied and the Defendant's motion is granted.

The Plaintiff's motion for summary judgment states that her argument that she is entitled to summary judgment in her favor is fully contained within her response to the Defendant's motion for summary judgment; no new arguments are presented in her motion. Hence, the ruling on Defendant's motion will resolve both motions.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995). If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion,

then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. 242, 248 (1986).

The Local Rules of this court specify the form and content for all motions for summary judgment and responses and replies thereto. See, Local Rule CDIL 7.1(D). As the Seventh Circuit has explained, "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir.1989). See also, Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1103- 04 (7th Cir.1990); L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc., 9 F.3d 561, 567 (7th Cir.1993). The Seventh Circuit has repeatedly put their imprimatur on strict enforcement of local rules, sustaining entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts. See, Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994) (collecting cases).

## UNDISPUTED FACTS

In neither Plaintiff's opposition to Defendant's motion nor in her own motion does she set out a statement of facts, nor does she provide the court with a statement-by-statement response to Defendant's statement of undisputed facts, despite the fact that both are required by this Court's Local Rule 7.1. Rather, Plaintiff states in her motion for summary judgment that "[t]here are no factual disputes with respect to the issue before the Court." (Doc. #8 ¶2). Accordingly, the Court finds that the facts set forth in Defendant's motion are undisputed.

Moreover, to the extent that there are fact-based arguments in Plaintiff's response that rely on facts that are not included in the Defendant's Statement of Fact, those additional facts are ignored as unsupported by the record. See, Waldridge, 24 F.3d 918, 922.

The facts as set forth by Defendant are as follows. Plaintiff, Norma J. Burkitt, is a participant in the health and welfare plan of the defendant, NECA-IBEW Welfare Trust Fund ("Fund"). The Fund is a not-for-profit fringe benefit fund established and administered pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Fund is administered by and through its Board of Trustees, and the benefits paid by the Fund are governed by a Summary Plan Description ("SPD") and Plan Document.

The SPD and the Plan document both provide in several places that the Trustees have discretionary authority to interpret the plan. For example, on page 57 of the SPD, it provides that "[t]he Trustees have discretionary authority to determine all benefit claim appeals and to interpret the Plan." The Plan document, on page 95, states: "The Trustees have discretionary authority to determine all benefit claim appeals and to interpret the Plan. The Trustees' decision in the appeal will be given judicial deference in any later court action."

Page 49 of the SPD excludes from coverage "any charge for services is subject to the exercise of the Trustees' discretion to reasonably interpret the terms of the Trust, Plan, or Summary Plan Description and that is deemed a non-Covered Expense or service." A similar provision is found in the Plan document at page 80.

The Plan document at p.48-49 cautions: "The fact that a physician may provide, order, recommend, or approve a service or supply does not mean that the service or supply will be

3

considered Medically Necessary for the medical coverage provided by the Plan." The SPD, on page 9, states that the Trustees:

> determine if a particular service, supply or procedure is Medically Necessary. The Trustees may rely on the advice of medical professionals retained by the Fund to make this determination. The fact that a physician may provide, order, recommend, or approve a service or supply does not mean that the service or supply will be considered Medically Necessary for the medical coverage provided by the Plan. ... The Trustees are the final determiners of Medical Necessity for benefits payable under this Plan.

The SPD explicitly excludes from coverage any "expense or charge for services or supplies...not Medically Necessary in treating the Injury or Sickness." The terms "Medically Necessary" and "Medical Necessity" are defined in the SPD as a service or supply that is:

> - Provided by or under the direction of a physician or other duly licensed health care practitioner who is authorized to provide and prescribe it;
> - Necessary in terms of generally accepted American medical standards;
> - Consistent with the symptoms or diagnosis and treatment of a Sickness or Injury;
> - Not provided solely for the convenience of the patient, physician, hospital, health care provider, or facility;
> - ***Appropriate***[1], as defined by the Plan, given the patient's circumstances and conditions;
> - ***Cost-efficient***[2], as defined by the Plan, for the supply or level of service that can be safely provided to the patient; and
> - Safe and effective for the Sickness or Injury for which it is used.

---

[1] The SPD defines a medical service or supply as "appropriate" if it is a "diagnostic procedure that is called for by the health status of the patient, and is as likely to result in information that could affect the course of treatment as and no more likely to produce a negative outcome than any alternative service or supply, both with respect to the Sickness or Injury involved and the patient's overall health condition; ***and*** it is care or treatment that is as likely to produce a significant positive outcome as and no more likely to produce a negative outcome than any alternative service or supply, both with respect to the Sickness or Injury involved and the patient's overall health condition."

[2] The SPD defines a medical service or supply as "cost-effective" if it "is no more costly than any alternative 'appropriate' service or supply when considered in relation to all health care expenses incurred in connection with the service or supply."

Norma Burkitt's physician referred her to a surgeon for treatment of her painful varicose veins. The surgeon's notes from the initial visit on September 14, 2006, read as follows:

> This patient presents with symptomatic varicose veins on both legs. It is principally the trunk of the greater saphenous vein bilaterally. Plans will be made to do bilateral saphenous vein ligation and stripping along with what few perforators remain after that using the R+TRIVEX. This was discussed with the patient in the office today.

While Burkitt was in the office, a bilateral venous reflux examination was conducted. A report documenting that test was prepared. In pertinent part, the report stated:

> FINDINGS: The common femoral, superficial femoral and popliteal veins ... are patent, easily compressible with normal phasic venous blood flow patterns. The proximal calf veins ... are totally compressible throughout their entire length bilaterally.
>
> * * * * *
>
> INTERPRETATION: There is no evidence for acute deep vein or superficial venous thrombosis in the lower extremities bilaterally. Color duplex imaging and Doppler examinations show no evidence for deep venous valvular incompetence bilaterally. Color duplex imaging and Doppler examinations show evidence for superficial venous valvular incompetence in the left leg. There is no evidence for venous valvular incompetence in the right leg in the superficial venous system. There is no evidence for perforator vein incompetence bilaterally.

Surgery was performed on November 13, 2006. Burkitt then submitted her medical claims to the Plaintiff Fund for payment. Payment of her claim was denied, on the grounds that there was no evidence of medical necessity for the surgical procedure. Burkitt filed an appeal of that decision in which she stated that the surgery was not for cosmetic reasons.

The Fund's Board of Trustees has delegated claims appeals to an Appeals Committee ("Committee") made up of 10 Trustees, appointed on a rotating basis. The Committee meets regularly to consider claims appeals. On October 23, 2007, the Committee met to consider Burkitt's appeal. Burkitt did not appear personally but the Union's business manager, who is also a Trustee on the Fund, spoke on her behalf.

Included in the records reviewed by the Committee were the reports of both physicians as well as the hospital records. The Committee sought further information from Aetna Insurance Company regarding the treatment and coverage for treatment of varicose veins. Aetna reported that it considers varicose vein excision, ligation, standard or foam sclerotherapy, and ambulatory phlebectomy to be medically necessary when the saphenous varicosities result in certain medical conditions which did not present in Burkitt. In addition, Aetna considers varicose vein excision, ligation, standard or foam sclerotherapy, and ambulatory phlebectomy to be medically necessary after an unsuccessful trial of conservative management, such as analgesics or compression stockings, for a minimum of six months when the saphenous varicosities result in either recurrent superficial thrombophlebitis or severe and persistent pain and swelling interfering with activities of daily living and requiring chronic analgesic medication.

The Committee asked Burkitt whether she had tried the alternative conservative treatments or to explain why such treatment should not have been attempted prior to electing surgery. Burkitt provided no evidence or explanation. Based on the terms of the Plan and the SPD and the record before it, the Appeal Committee denied the appeal because "no benefits are allowed for services or supplies deemed not Medically Necessary."

Plaintiff then filed this action, asking the court to find that the Committee's decision was arbitrary and capricious. She argues that it should not have been necessary for her to "jump through the hoops of six months of less costly conservative treatment when she had already endured at least six months of severe pain and throbbing." According to Plaintiff, the Fund failed to consider the most important aspect of Burkitt's problem, namely her symptoms.

**STANDARD OF REVIEW**

Where an ERISA plan gives the trustees discretion to construe the terms and conditions of the plan, judicial review is deferential, and any decision is upheld unless it is found that the decision was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989). Plaintiff does not dispute that this is the proper standard in this case. I agree, given the explicit discretion that is repeatedly reserved to the Fund to interpret the terms of the plan and to decide all appeals.

A court applying deferential review must accept a reasonable interpretation even if it might differ from another equally reasonable interpretation. Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1149 (7th Cir. 1998); Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 658 (7th Cir. 2005). The Court is not to substitute its judgment for the judgment of the trustees. Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 828 (7th Cir. 2004). The decision should be upheld unless it was "downright unreasonable." Morton v. Smith, 91 F.3d 867, 870 (7th Cir. 1996).

## DISCUSSION

Under the terms of this Plan, the Committee's denial of Burkitt's appeal was a reasonable decision. The fact that Burkitt's doctors agreed the surgery was appropriate does not mean that it was covered under the Plan. The Plan expressly cautions that more than a doctor's order is needed to show medical necessity; the definition includes eight different criteria, only one of which is a doctor's recommendation.

The fact that Plaintiff had endured pain for six months does not (without more) mean that the surgery was covered under the Plan. While one might certainly argue that it would be reasonable to provide coverage under those circumstances, that does not make the contrary decision arbitrary. Being based on the facts before it, the terms of the Plan, and the information provided by Aetna, the

decision that Burkitt's surgery had not been medically necessary was neither arbitrary nor capricious.

Plaintiff's stated basis for her appeal - that the surgery was not cosmetic - does not help her case one bit. This was never the basis for the Fund's decision not to pay her claim, nor was it the basis of the Committee's denial of her appeal.

Plaintiff asserts that the Plan might well have spent more had she first attempted the conservative alternative treatment and then had the surgery, because the Plan would certainly have paid for both. This assertion is without support in the record. Plaintiff did not try the conservative alternative treatments, so it cannot be said with any certainty what the outcome of such a treatment would have been. Even assuming that the likely outcome would have been surgery, however, does not make this requirement unreasonable. Non-invasive procedures, when they work, have a number of benefits, not the least of which is that they usually cost less. Requiring those procedures to see if they work before authorizing coverage for much more expensive treatments[3] is reasonable.

The terms of the Plan - including "medical necessity" are clearly defined. The decision whether a procedure meets the definition of "medically necessary" is expressly delegated to the Committee's discretion. The Committee sought more information about the medical treatment in question, to determine if it was "consistent with the diagnosis," "appropriate" and "cost-efficient." Plaintiff was afforded but did not take advantage of the opportunity that was given her to supplement that record with further information. The Committee then made an informed judgment, one that was

---

[3]Plaintiff's claim for surgery exceeded $26,000. The cost for 6 months of analgesics and support hose would no doubt have been far less.

based on the information in the record before it. The Committee's decision not to afford coverage was not arbitrary and capricious.

A careful reading of Plaintiff's argument reveals that it is not actually the decision of the Committee with which Plaintiff quarrels but rather the terms of the Plan itself. It has long been black letter law that ERISA does not mandate provision of any insurance benefits to employees, nor does it delineate the scope of any coverage that is provided. See, <u>Moore v. Reynolds Metals Co. Retirement Program</u>, 740 F.2d 454, 456 (6th Cir. 1984)("Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide."); <u>Coble v. Bonita House, Inc.</u>, 789 F. Supp. 320 (N.D. Cal. 1992)(decision whether to provide insurance and the scope of that coverage is "entirely at the discretion of the employer"); <u>Williams v. Wright</u>, 927 F.2d 1540, 1548 (11th Cir. 1991); <u>Viggiano v. Shenango China Division of Anchor Hocking</u>, 750 F.2d 276 (3d Cir. 1984)(citing cases). What ERISA does is regulate the administration of benefit plans once they are established.

In the case before this Court, the employer provided insurance coverage but limited that coverage to services that it deemed "medically necessary." The fact that Burkitt's particular procedure did not fall within the scope of that definition is not offensive to ERISA, and Plaintiff's dissatisfaction with the terms of her insurance coverage does not make the Trustees' decision arbitrary or capricious.

**CONCLUSION**

9

Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant.

ENTERED ON October 29, 2009

        s/ John A. Gorman

        JOHN A. GORMAN
        UNITED STATES MAGISTRATE JUDGE